# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUST ENTERPRISES, INC.,** | : | No. 3:07cv1726 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **O'MALLEY & LANGAN, P.C.,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are defendant's motion to dismiss (Doc. 9) and motion for sanctions (Doc. 22). Having been fully briefed, the matters are ripe for disposition.

**I. Background**

This matter is before the court as a trademark dispute. Since 1993, Just Enterprises ("Just"), a Missouri corporation, uses in interstate commerce the telephone number 1-800-JUSTICE. (Complaint (Doc. 1) (hereinafter "Complt.") at ¶ 2). Just owns this number, and possesses a valid trademark registration from the United States Patent and Trademark Office (USPTO). (Id. at ¶¶ 2-3). The trademark bears the USPTO registration number 2,727,137. (Id. at ¶ 2). Since 1993, Just has used this number in interstate commerce in connection with the legal referral services the company provides to licensees. (Id. at ¶ 4).

Defendant O'Malley & Langan, P.C., is a Scranton, Pennsylvania law firm. (Id. at ¶ 5). As part of its legal business, O'Malley & Langan uses the mark (888) JUSTICE to identify itself and its legal business. (Id.). The law firm licensed this

number from Justice, Inc.  (Id. at ¶ 6).  Just considers this use infringing on its 1-800-JUSTICE trademark and has informed O'Malley & Langan of its position.  (Id. at ¶ 7).  Just wrote the law firm demanding that it cease any infringing use of Just's trademarked number.  (Id.).  Defendant did not respond to this letter.  (Id.).  Despite this notice from Just, O'Malley & Langan has continued to use the (888) JUSTICE number in connection with its business.  (Id. ¶ 8).  Plaintiff alleges that this continued use has caused "consumer confusion, mistake and deception."  (Id.).  Consumers, plaintiff contends, are likely to conclude that services offered by O'Malley & Langan through the (888) JUSTICE number "originate" or are "licensed" or sponsored by Just, or that the law firm and the company are somehow affiliated.  (Id. at ¶ 9).  Just contends that O'Malley & Langan's infringing action in relation to the mark is intentional.  (Id. at ¶ 10).

On September 21, 2007, plaintiff filed the instant action.  Count I of the action raises a claim for trademark infringement pursuant to 15 U.S.C. § 1114, alleging that defendant improperly used, copied or imitated the 1-800-JUSTICE mark in interstate commerce.  (Id. at §§ 15-16).  Count II alleges false designation of origin in violation of 15 U.S.C. § 1125(a).  Plaintiff contends that defendant's use of (888) JUSTICE falsely creates the impression that Just approves of and is associated with the services offered by O'Malley & Langan.  (Id. at §§ 24-25).  Count III consists of a state-law claim for unfair competition.  Defendant's actions in using the mark, plaintiff contends have harmed Just's reputation and diluted the value of the trademark.  (Id.

2

at § 32). In Count IV, plaintiff alleges common law trademark infringement. As relief, plaintiff seeks an injunction preventing O'Malley & Langan from using the (888) JUSTICE number, an order for the destruction of all goods and marks that infringe on the 1-800 number, payment of damages to plaintiff through the profits derived from use of the offending number, punitive and exemplary damages, costs and attorney's fees and defendant's written notification to all current and prior clients that no connection exists between the disputed marks.

On October 30, 2008 defendant filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12. (Doc. 9). Defendant also filed a motion for sanctions (Doc. 22) against the plaintiff, alleging that the complaint had been filed for an improper and vexatious purpose. The parties then briefed these motions, bringing the case to its present posture.

## II. Jurisdiction

As this claim is brought pursuant to the Lanham Act, 15 U.S.C. § 1501, *et seq.*, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

## III. Legal Standard

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a

3

claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## IV. Discussion

### A. Motion to Dismiss

Defendant offers several grounds for granting its motion to dismiss. We will address each in turn.

#### i. Complaint is duplicative of a prior action

Defendant argues that this case should be dismissed because plaintiff has filed a number of lawsuits related to the same matters in a number of different federal courts. Plaintiff has filed lawsuits in five different federal courts, and defendant argues that these lawsuits "involve *identical* legal issues, namely service mark infringement, unfair competition, and related state and common law claims arising from the use of the number 888-JUSTICE." (Defendant's Brief at 6). Because discovery in one of those lawsuits is much further along than discovery in this case, many of the legal questions here presented will be heard by the court in that case before this case can address them. Dismissing the case in this jurisdiction will therefore preserve judicial economy.

Courts have found that "there is a 'power inherent in every court to control the

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Remington Rand Corp. v. Business Systems, Inc., 830 F.2d 1274, 1275-76 (3d Cir. 1987). Thus, a federal suit may be dismissed for 'reasons of judicial administration . . . whenever it is duplicative of a parallel action already pending in another court.'" Chrysler Credit Corp. v. Marino, 63 F.3d 574, 578 (7th Cir. 1995) (quoting Serlin v. Arthur Andersen & Co., 3 F3d 221, 223 (7th Cir. 1993)). Courts in the Third Circuit have found that "identity of parties and issues between [two suits] leads us to conclude that it would be wasteful and inconvenient" to allow both suits to go forward. Remington Rand, 830 F.2d at 1276. Still, such a suit "is duplicative only if it involves the 'same claims, parties, and available relief.'" Chrysler Credit, 63 F.3d at 578; see also Remington Rand, 830 F.2d at 1276 (dismissing a second suit that involved "precisely the same parties" as the first action that also included an "identity of issues.").

This is not a case where identity of parties and issues counsel in favor of dismissing this action. While the grounds for relief in the trademark cases may be largely the same, there is not identity of parties. If there were an identity of parties and issues to another case filed in a different federal court, we would be required to consider whether the facts require us to decline jurisdiction under the "first-filed" rule. See EEOC v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) (describing the "first-filed rule," which "gives a court 'the power' to enjoin the subsequent prosecution fo proceedings involving the same parties and the same

issues already before another district court."). Here, while plaintiff is a party to the other federal lawsuits, defendant is not. The issues in the cases in other courts may be quite similar, but the facts of this case are unique and questions of Pennsylvania law which apply on this case exist. We therefore disagree with the defendant that this court should abstain from hearing the case because litigation raising similar issues between different parties exists in other jurisdictions.

### ii. Vagueness of complaint

Defendant contends that the complaint should be dismissed because it is vague. Defendant insists that plaintiff's complaint, which alleges that defendant's "use of (888) JUSTICE and 'similar infringing phrases' ha[ve] caused and [are] likely to cause confusion" lacks any factual allegations that identify similarly offending phrases and thus fails to provide defendant fair notice of the claims against it. (Defendant's Brief in Support of Motion to Dismiss (Doc. 10) (hereinafter "Defendant's Brief") at 12). As support for this argument, defendant points only to the standards for notice pleading articulated in the Federal Rules of Civil Procedure and in the seminal United States Supreme Court case <u>Conley v. Gibson</u>, 355 U.S. 41 (1955).

Plaintiff's claim does not fall below the federal pleading standard in its description of defendant's alleged infringing behavior. As the court noted in <u>Conley v. Gibson</u>, "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. <u>Conley</u>, 355 U.S. at 47. To the

6

contrary, all the Rules require is a 'short and plain statement of the claim' that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id.  Here, plaintiff's claim is sufficient to alert defendants that they are being sued for allegedly violating plaintiff's trademark in the number 1-800-JUSTICE by using the number 1-888-JUSTICE.  A reasonable person could conclude from the language of the complaint that plaintiff also intends to seek relief for any use by the defendant of similar numbers or language in advertising.  Because "the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues," will allow the parties to discern whether any–and what types–of infringement took place, the court finds that the complaint should not be dismissed on these grounds.[1]  Id.

### iii. fair use

Defendant argues that plaintiff's claims for trademark infringement under the Lanham Act should be dismissed because defendant's use of the number is fair use

---

[1] Though we would have denied that motion as well, a more appropriate means of addressing the alleged vagueness of the complaint would be through a Rule 12(e) motion for a more definite pleading. See FED. R. CIV. P. 12(e) (establishing that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."). Here, defendant was made aware by the pleading that plaintiff sought relief for any use a phrase that resembled 1-800-JUSTICE. Defendant was not left so unsure of the bases for the action that a responsive pleading was impossible. To do otherwise would be to adopt what the Federal Rules of Civil Procedure rejects: "the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome." Conley, 355 U.S. at 48.

and thus not actionable under the statute. The use of the word "justice" in connection with a toll-free prefix as a means of describing access to legal services, defendant contends, does not violate plaintiff's trademark because that use is merely descriptive. In addition, defendant's use of the word "justice" is merely descriptive of the services the company provides and thus does not constitute a trademark violation.

"The holder of a registered mark (incontestable or not) has a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" KP Permanent Make-Up v. , 543 U.S. 111, 117 (2004) (quoting 15 U.S.C. § 1114(1)(a)). To prevail on such a claim, the holder of the mark must provide "'proof of infringement as defined in section 1114.'" Id. (quoting 15 U.S.C. § 1114(1)(a)). The holder must also provide "a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." Id. A defendant can avoid liability for infringement by demonstrating that it engaged only in "fair use" of the mark. See 15 U.S.C. § 1115(b)(4).[2] To demonstrate "fair use," a defendant must show "that they (1) used [the trademark] merely to describe their

---

[2]Section 1115(b)(4) provides a defense to infringement when "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4).

8

product; (2) did not use [the mark] as a trademark; and (3) used [the mark] in good faith." Institute for Scientific Information, Inc. v. Gordon & Breach, 931 F.2d 1002, 1008 (3d Cir. 1991).

Defendant raises a number of arguments about the strength of plaintiff's trademark, as well as the validity of its defense of fair use of the word "justice" in connection with the 888-JUSTICE number.  While these arguments may eventually prevail when the fact-finder examines the evidence, at this stage the court is tasked with examining whether plaintiff could prevail based on the facts alleged in the complaint.  Here, plaintiff alleges that it has a registered trademark for 800-JUSTICE and that plaintiff's use of the number 888-JUSTICE is likely to cause confusion with the registered mark.  Defendant's use of the 888-JUSTICE number may have constituted "fair use" in a legal sense, but we decline to reach that determination until the parties have had an opportunity to develop the evidence in this case.  The motion to dismiss is denied on this point.

### iv. improper broadening of meaning of registered mark

Defendant contends that plaintiff's complaint under the trademark act should be dismissed because plaintiff seeks improperly to expand the scope of its mark to include all legal services, not just legal referral services as specified in plaintiff's trademark registration. Trademark law proceeds on the theory that "the senior user has priority in product line Z if its use is within the 'natural area of expansion' of product line X." MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 24:20 (4th ed. 2005).  "The perception of customers at the time of the junior user's first use" of the mark on the new

9

product line controls.  Id.  Therefore, whatever the original specification of plaintiff's mark, plaintiff could have a claim over any use that infringed in an area into which plaintiff could "naturally" expand its mark.  Plaintiff contends that the evidence will show that it has long expanded use of the mark for services beyond legal referral services, and did so before defendant began to use 888-JUSTICE in connection with its legal services.  As with the dispute over fair use, the court finds that resolution of this issue is one that awaits the completion of discovery.  We cannot resolve this question of fact on the basis of the complaint and the representations in the brief, and will therefore deny the plaintiff's motion here as well.

### v. State law claims

Defendant also argues that plaintiff's state law statutory claims and common-law claims for infringement and unfair competition should be dismissed.  Pennsylvania law provides that "[t]he owner of a mark which is famous in this Commonwealth shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark."  54 Pa. C. S. § 1124.  A plaintiff is entitled to injunctive relief only if the plaintiff can show that "the person against whom the injunctive relief is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark."  Id.  The act also provides protection for fair use, non-commercial use, and news reporting and commentary.  Id.   Courts have noted that in terms of federal law and Pennsylvania law on trademark dilution and infringement, "the federal statute and the state laws are identical except that the Pennsylvania law narrows the focus to acts within the

10

Commonwealth." Scott Fetzer Co. v. Gehrig, 288 F. Supp. 2d 696, 701 n.7 (E.D. Pa. 2003). Similarly, in Pennsylvania "a common-law trademark infringement is governed by identical standards" as those under federal law. Nugget Distributors Co-op., Inc. v. Mr. Nugget, Inc., 776 F. Supp. 1012, 1016 (E. D. Pa. 1991). Accordingly, since we have found that plaintiff has stated a claim under federal law, we find plaintiff has likewise stated claims under Pennsylvania law. We will deny the motion to dismiss on this point.[3]

### vi. improper service

Defendant argues that the complaint should be dismissed because service was improper. Service was made to Linda L. Golembewski, a receptionist at the O'Malley & Langan Firm, and defendant argues that she could not properly accept service for the firm under Pennsylvania law.

Federal Rule of Civil Procedure 12(b)(5) provides that a court may dismiss a complaint for insufficient service of process. The party that asserts service is valid has the burden of proof. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). The rules of the state where a federal district court sits govern service of process. See FED. R. CIV. P. 4(e)(1) (providing that "[u]nless federal law provides otherwise, an individual . . . may be served in a judicial

---

[3] Defendant argues that plaintiff's state-law claims should be dismissed in part because plaintiff has not alleged that its mark is famous in Pennsylvania and that its dilution claim cannot therefore stand. The question of the notoriety of the mark in Pennsylvania is a question of fact better resolved after discovery, not at this stage of the litigation. The court reads plaintiff's complaint to contend that its mark, by virtue of its registration, is valid in every state, including Pennsylvania. If, after discovery, defendant can demonstrate that the mark is not known in Pennsylvania, the issue may again be raised before the court.

11

district of the United States by: (1) following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."); Bane v. Netlink, Inc., 925 F.2d 637, 639 (3d Cir. 1991); Violanti v. Emory Worldwide, 847 Fed. Supp. 1251, 1255 (M.D. Pa. 1994). State rules apply unless the federal statute that governs the case provides specific service rules. See FED. R. CIV. P. 4(E) (providing that state law applies to service of process "unless federal law provides otherwise."). The trademark statute that provides this court with jurisdiction does not specify the terms of service, and state law therefore applies. The question on this issue, then, is whether plaintiff properly served defendant by providing a copy of the summons and complaint to the law firm's receptionist.

Service of partnerships and unincorporated associations in Pennsylvania is governed by Pennsylvania Rule of Civil Procedure 423. Service of corporations or other similar entities is governed by Pennsylvania Rule of Civil Procedure 424. Both of those rules provide that service may be made to "the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity." PA. R. CIV. P. 423(3), 424(2). Pennsylvania courts have found that "the purpose of the rule is to satisfy the due process requirement that a defendant be given adequate notice that litigation has commenced." Cintas Corp. V. Lee's Cleaning Servs., 700 A.2d 915, 919-20 (Pa. 1997). Such courts have been less concerned with the actual title of the person receiving service and more

concerned that there "be a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it." Id. at 920.  They have therefore allowed service of process on a receptionist at a defendant's usual place of business, especially when the receptionist held him or herself out as in charge of the office. See, e.g., Hopkinson v. Hopkinson, 470 A.2d 981, 987 (Pa. Super. Ct. 1984) (finding that service was proper because it "was made upon one Sue Caum, the receptionist at the offices of Abington OB/GYN Ltd. corporation [and] [t]he Sheriff's return of service clearly indicates that Ms. Caum represented to the deputies that she was the person in charge at the time of service."); Cintas Corp., 700 A.2d at 920 (finding service to receptionist proper because the receptionist had "identified herself [to the process server] as the person in charge of the business at the aforesaid address."); Farrell v. Board of Trustees, 269 A.2d 890, 892 (Pa. 1970) (service on secretary of union local proper because secretary performed the substantial duties in question in lawsuit); Knez Optical, Inc. v. Singer Optical Group, Inc., No. 94-7582, 1995 WL 241428, at * 2 (E.D. Pa. Apr. 20, 1995) (finding that service on a receptionist was proper because receptionist was "employed by defendants and [had] frequent contact with defendants.").

Here, plaintiff served defendant with the complaint by giving it to the law firm's receptionist.  Both parties agree that she received the service and that she was employed by the firm.  No one could be confused that she was a representative of

that firm. That connection as an employee representing the public face of the firm is sufficient for the plaintiff to assume that defendant would receive notice of the action. Indeed, the law firm itself received the document in ample time to craft a response. No allegation exists that by providing the summons to a receptionist defendant was prevented from being apprised of the action against it and the service therefore insufficient. Accordingly, we will deny the motion to dismiss on this ground.

**B. Motion to Stay**

Defendant also filed motion to stay the case pending resolution of the already-pending action that raises nearly identical issues in the Western District of Missouri and involves both the plaintiff and the company that provided defendant in this case with the license to use the 888-JUSTICE NUMBER.[4]  "A United States district court has broad power to stay proceedings" as part of the court's responsibility to manage its docket in an efficient fashion. Bechtel Corp. v. Laborers' International Union, 544 F.2d 1207, 1215 (3d Cir. 1976). Accordingly, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Id. In determining whether to stay an action, courts examine "principles of comity, the adequacy of the relief available in the alternative form, the convenience of the parties, counsel and witnesses and the possibility of prejudice if the stay is granted."

---

[4] That case is captioned Just Enterprises, Inc. v. (888) JUSTICE, Inc., et al., No. 3:06CV5023-CV-SW.

Balfour v. Gustein, 547 F.Supp. 147, 148 (E.D. Pa. 1982).

The court will not stay the matter pending resolution of the other, similar case in the Western District of Missouri. Whatever the similarities between the two cases, plaintiff has raised state-law issues which the other court will not address. In addition, as explained below, the disposition of that matter offers no controlling authority for this case. The court would therefore be forced to address the issues raised in this case, no matter the outcome of the Western Missouri action. In addition, the facts of this case are separate and require a separate interpretation. Given the pace of litigation in federal courts and the possibility of appeal in the case pending in the Western District of Missouri, the case in this jurisdiction could be stayed for years. Accordingly, the interests of efficiency and justice are both served by allowing the case to go forward in this court. The defendant's motion to stay will be denied.

### C. Motion for Sanctions

Defendant also filed a motion for sanctions in this case (Doc. 21), alleging that plaintiff has filed multiple lawsuits across the country in attempt to harass defendants who use the (888) JUSTICE number. The action in Missouri, defendant contends, is nearly complete, and a motion for summary judgment is imminent. According to the defendant, any ruling by the court in that case would involve *"identical* legal issues" to those in this case, and would thus be "dispositive of any case involving the use of 888-JUSTICE." (Defendant's Brief in Support of Sanctions (Doc. 22) at 2)

15

(emphasis in original). Lawsuits filed in other jurisdictions are therefore unnecessary and lacking in legal justification and motivated solely by the desire to increase legal costs for the defendants. They are thus worthy of sanction under Federal Rule of Civil Procedure 11. Defendant also seeks costs and attorney's fees under 28 U.S.C. § 1927, alleging that plaintiff in filing this action has multiplied the proceedings unreasonably. Finally, defendant contends that the court should impose sanctions under its inherent power to discipline attorneys who act in bad faith or for oppressive reasons.

We first note that a decision in the Western District of Missouri would not be dispositive on this court. The United States District Court for the Western District of Missouri is a coordinate court to this one; any decision from that court would have only persuasive authority on this one. Further, a decision from that court, no matter what legal issues were decided in the case, would not have a preclusive effect on this court. Defendant presumably argues that plaintiff would be barred by the doctrine of res judicata. That doctrine "bars repetitious litigation of the same cause of action." Cramer v. General Tel. & Electronics Corp., 582 F.2d 259, 266 (3d Cir. 1978). "Once a court of competent jurisdiction has entered a final judgment on the merits of a particular cause of action, the parties to that action are bound not only by every matter which was offered and considered in reaching that judgment, but also by every other matter which could have been offered." Id. The doctrine would apply whether viewed as claim or issue preclusion, since the parties to the case are

16

different in this action and the action in the Western District of Missouri. See, e.g., Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 n.6 (1982) (establishing that "[u]nder collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties."). Defendant is therefore incorrect to argue that suit in this court is wholly unnecessary and worthy of sanction.

The fact that plaintiff has filed numerous lawsuits related to violation of its trademark by various parties does not in itself make this particular lawsuit unnecessary and worthy of sanction: defendant has a right to protect its mark against all those who infringe on it. Filing a series of suits against distinct parties to protect a trademark is not grounds for sanctions, no matter how similar the individual suits are. Indeed, filing suit against individual parties who allegedly have violated plaintiff's trademark rights appears necessary to prevent dilution. Moreover, the court has found that the claims raised by plaintiff in this lawsuit can survive a motion to dismiss, and sanctions are therefor inappropriate against the party which filed the suit. Because there is potential merit to this claim as here filed, we cannot find sanctions an appropriate remedy in this case. The motion for sanctions will be denied as well.

## V. Conclusion

The plaintiff has stated a claim for trademark violations under both federal and Pennsylvania law. Defendant's motions to dismiss and for sanctions will both be

17

denied. The court will not stay the case until resolution of the closely related matter in the Western District of Missouri. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUST ENTERPRISES, INC.,** | : | No. 3:07cv1726 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **O'MALLEY & LANGAN, P.C.,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 29th day of May 2008, the defendant's motions to dismiss (Doc. 9) and for sanctions (Doc. 21) are hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

19